STATE OF NORTH CAROLINA v. EGBERT FRANCIS, JR.

No. 471A94

(Filed 28 July 1995)

**1. Appeal and Error § 155 (NCI4th)— murder—instructions on aiding and abetting and acting in concert—objection at trial different from argument on appeal—reviewed as plain error**

A first-degree murder defendant's contentions as to instructions on aiding and abetting and acting in concert were reviewed

under the plain error standard where defendant did not object at trial on the ground upon which he asserts error on appeal.

**Am Jur 2d, Trial § 1464.**

2. **Criminal Law § 792 (NCI4th)— murder—acting in concert—aiding and abetting—instructions**

Although the trial court in a first-degree murder prosecution could have been more precise in denominating an acting in concert instruction as such and could have been more explicit in informing the jurors when it was moving from the portions of its instructions relating to acting in concert to those relating to aiding and abetting, and even when it is assumed that the trial court erred when it inserted the words "acting in concert" in its final mandate on aiding and abetting, there was no plain error because the instructions closely tracked the pattern instructions and the evidence supporting defendant's guilt on either theory was overwhelming.

**Am Jur 2d, Trial §§ 1255, 1256.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing consecutive sentences of imprisonment for life entered by Brooks, J., on 13 May 1994 in Superior Court, Wake County, upon jury verdicts finding defendant guilty of two counts of first-degree murder. Heard in the Supreme Court on 9 May 1995.

*Michael F. Easley, Attorney General, by Wm. Dennis Worley, Associate Attorney General, for the State.*

*George E. Kelly, III, for defendant-appellant.*

MITCHELL, Chief Justice.

Defendant, Egbert Francis, Jr., was tried noncapitally on proper indictments charging him with two counts of first-degree murder. The State's evidence tended to show that on 19 November 1991, two bodies were found in the bushes near Wake Medical Center in Raleigh. The victims, Ssuraj Ibrahim and Corede Sondunke, had each been shot in the head but with different caliber guns. Blood tracks showed that their bodies had been dragged from a nearby road to the bushes. The police found a slip of paper with defendant's address in one of the victim's pockets. The police eventually went to the defendant's address with a search warrant and found several firearms and a large amount of ammunition.

The police were informed that a black sport-utility vehicle had been observed near the crime scene. Subsequent investigations led them to a burned-out black Nissan Pathfinder in Virginia. The Pathfinder was registered to Andrew Robinson. Robinson initially denied any involvement when questioned by the police, but he later confessed. He testified at trial that the two victims were drug couriers from New York who routinely brought drugs to defendant. Defendant would then give some of the drugs to Robinson for sale. Once the drugs were sold, defendant and Robinson would give the couriers part of the proceeds of the sales. The couriers would then return to New York and give the money to a man named Sal.

Robinson testified that a few days before the murders, Ibrahim and Sondunke, who were couriers for Sal, came to Raleigh to collect money for drugs previously delivered. Defendant had spent some of the money and could not pay them. On a prior occasion when defendant could not pay Sal, defendant's hand had been broken. On the night of the murders, defendant and Robinson left the couriers at defendant's house and went to a party. When they left the party, they drove back toward defendant's house. During that drive, defendant asked Robinson if he would help defendant kill the two couriers. Defendant explained that he was afraid that if the couriers returned to New York without the money, either defendant or his mother would be killed. Robinson agreed to help defendant.

When they arrived at defendant's house, defendant went inside while Robinson waited in the Nissan. Defendant emerged from the house with two guns. He gave one of them to Robinson and went back inside to get the two couriers. The four men then drove until they ended up in a secluded area behind Wake Medical Center. Defendant and Robinson had previously agreed that defendant would signal Robinson by tapping him on the shoulder. On defendant's signal, defendant shot Sondunke in the head, and Robinson shot Ibrahim in the head. They then dragged the bodies out of the car and left them in the bushes, where they were eventually found. Before they left, defendant went back to the bushes and shot one of the victims again to make sure that he was dead.

The jury found defendant guilty of both counts of first-degree murder. The trial court entered judgments imposing consecutive life sentences.

Defendant's only assignment of error concerns the instructions relating to the murder of Ssuraj Ibrahim. He does not assign error to

his conviction, judgment or sentence for the murder of Corede Sondunke. The trial court instructed the jury that it could convict defendant of first-degree murder based either on the theory of acting in concert with or on the theory of aiding and abetting Andrew Robinson. Defendant argues that the trial court's instructions on acting in concert and aiding and abetting were erroneous in several respects. He contends that the trial court gave its instructions concerning the Ibrahim killing in a manner that intermingled the theories of acting in concert and aiding and abetting. He says that the form of the instructions led to confusion of the jurors and resulted in a verdict of first-degree murder based on an altogether novel theory, to wit: "guilty of aiding and abetting by acting in concert."

[1] As an initial issue, we must address the standard of review to be applied on appeal. Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure sets forth the procedures for preserving instructional errors for appeal.

> A party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, *stating distinctly that to which he objects and the grounds for his objection*; provided, that opportunity was given to the party to make the objection out of the hearing of the jury, and, on the request of any party, out of the presence of the jury.

N.C. R. App. P. 10(b)(2) (emphasis added).

In the charge conference, the State requested instructions on acting in concert and aiding and abetting according to North Carolina Pattern Instructions 202.10 and 202.20A, respectively. Defendant objected to the instructions on the ground that the jury would be instructed on these theories only with reference to the victim Ibrahim and not with reference to the victim Sondunke. The trial court indicated that based on the evidence, the theories applied only to the murder of Ibrahim. Defense counsel then responded: "That's my concern. I don't want the jury to hear the Court indicate whether it applies or not." The trial court noted the objection, and the charge conference continued.

At the conclusion of the charge conference, the challenged instructions were given to the jury. The jury was sent out of the courtroom when the instructions were completed, and the trial court asked the defendant if he had any requests for changes in the instructions.

**STATE v. FRANCIS**

[341 N.C. 156 (1995)]

Defense counsel replied: "Your honor, I have nothing different from what I raised before. . . . [I] [o]bject to the instructions on acting in concert as to each charge and instruction. I object to having instructions on aiding and abetting with regard to each charge. These are the same objections I made before. I'm just for the record raising them again at this time."

Although defendant objected to the instructions, he did not object on the ground upon which he now asserts error. His objection was based on the ground that the trial court should not indicate that the jury could find from the evidence at trial the theories of acting in concert and aiding and abetting applied to one murder but not the other. This is a markedly different ground than that forming the basis for the assignment of error presented to this Court. As noted above, defendant now objects to the form of the trial court's instructions on the theories at issue. He does not contend that the challenged instructions were not warranted by the evidence. Indeed, he cannot. There was plenary evidence to support each instruction. In *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983), we said that "[t]he purpose of Rule 10(b)(2) is to encourage the parties to inform the trial court of errors in its instructions so that it can correct the instructions and cure any potential errors before the jury deliberates on the case and thereby eliminate the need for a new trial." *Id.* at 660, 300 S.E.2d at 378. In the present case, any problem with the form of the trial court's instructions could have been cured easily by an objection from defendant on the ground upon which he now contends that the trial court erred. As the objections at trial in no way supported the defendant's assignment of error on appeal, we conclude that defendant did not preserve this error for appellate review pursuant to Rule 10(b)(2). *See State v. Allen*, 339 N.C. 545, 554-55, 453 S.E.2d 150, 154-55 (1995) (spirit and purpose of Rule 10(b)(2) were not met when defense counsel failed to object, as that failure denied the trial court the opportunity to cure perceived errors in the instruction). Therefore, this assignment of error must be reviewed under the plain error standard. *Odom*, 307 N.C. 655, 300 S.E.2d 375.

[2] The trial court first instructed the jury as to acting in concert and immediately followed with an instruction on aiding and abetting. These instructions were virtually identical to the North Carolina Pattern Instructions. *See* N.C.P.I.—Crim. 202.10 (1993); *see also* N.C.P.I—Crim. 202.20A (1989). The trial court correctly instructed the jury concerning acting in concert when it stated in part: "If two or more persons act together, with a common purpose to commit the

**STATE v. FRANCIS**

[341 N.C. 156 (1995)]

crime, each of them is held responsible for the acts of the other done in the commission of the crime." *See State v. Taylor*, 337 N.C. 597, 608, 447 S.E.2d 360, 367 (1994). The trial court also correctly instructed the jurors on the law as to aiding and abetting when it told them that they had to find three things in order to convict defendant of first-degree murder on that theory: (1) that the crime was committed by another; (2) that the defendant knowingly advised, instigated, encouraged, procured, or aided the other person; and (3) that the defendant's actions or statements caused or contributed to the commission of the crime by the other person. *See generally Allen*, 339 N.C. 545, 453 S.E.2d 150.

Defendant does not challenge the above instructions as being improper statements of the substantive law. First, he argues that the trial court failed to clearly denominate its acting in concert instruction as such by prefacing the instruction with a clear statement that it was instructing on acting in concert. Second, he says that the trial court failed to delineate for the jury where the acting in concert instruction ended and the aiding and abetting instruction ·began. Finally, defendant contends that the above errors were exacerbated by the trial court's later instruction concerning aiding and abetting in its final mandate:

> So, I charge that if you find from the evidence beyond a reasonable doubt that on or about the alleged date, Andrew Robinson, Jr. committed the crime of first-degree murder of the victim Ssuraj Ibrahim, and that the defendant knowingly advised, instigated, encouraged, procured, or aided, or *acting in concert with* Mr. Robinson to commit the crime, and that in so doing, the defendant's actions or statements caused or contributed to the commission of the crime by Mr. Robinson, it would be your duty to return a verdict of first-degree murder.

(Emphasis added.) Defendant contends that the addition of the emphasized language, coupled with the trial court's failure to clearly inform the jury where the instruction on acting in concert ended and the instruction on aiding and abetting began, resulted in his conviction on the theory of aiding and abetting by substituting acting in concert for the second requirement of aiding and abetting.

We concede that the trial court could have been more precise in denominating the acting in concert instruction as such. Further, the trial court could have been more explicit in informing the jurors when it was moving from the portions of its instructions relating to acting

in concert to those relating to aiding and abetting. However, even when we assume *arguendo* that the trial court erred when it inserted the words "acting in concert" in its final mandate on aiding and abetting, any such error was harmless.

The general rule is that "a charge must be construed 'as a whole in the same connected way in which it was given.' When thus considered, 'if it fairly and correctly presents the law, it will afford no ground for reversing the judgment, even if an isolated expression should be found technically inaccurate.' " *State v. Tomblin*, 276 N.C. 273, 276, 171 S.E.2d 901, 903 (1970) (quoting *State v. Valley*, 187 N.C. 571, 572, 122 S.E. 373, 374 (1924)). We are convinced that the aforementioned imperfections could not have led the jurors to give the trial court's instructions the convoluted construction urged by defendant. As noted previously, the instructions closely tracked the pattern instructions. Additionally, the evidence which supported defendant's guilt on either theory was overwhelming. Considering the instructions as a whole, we conclude that they fairly and correctly presented the law. Therefore, defendant has failed to show that "absent the [alleged] error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993). Consequently, he has failed to show plain error, and this assignment of error must be overruled.

For the foregoing reasons, we conclude that the defendant received a fair trial, free of prejudicial error.

No error.