HUDSON, Judge.
On 24 April 2003, a jury convicted defendant William Odell Paul ("defendant") of four counts of indecent liberties with a child and three counts of first-degree sex offense with a child. In a consolidated judgment, the court sentenced defendant to 360 to 441 months imprisonment. Defendant appeals; we find no error.
The evidence tended to show that, in 1995, defendant and Tessie Slade ("Tessie") began living together at 1114 Shaw Street in Burlington. They later married, and resided with several children, including Tessie's daughter, C.T. In August 1998, when C.T. was eight years old, defendant began having anal intercourse with her. These incidents, which took place about once a week onthe deep freezer in the kitchen and on the living room couch, continued until December 1998.
In January 1999, Tessie was shot, and after a prolonged hospital stay, returned home in June 1999, severely disabled. Defendant did not have anal intercourse with C.T. during her mother's hospital stay, but resumed the pattern after Tessie returned home. In the summer of 1999, defendant and Tessie separated, but defendant continued to support C.T. financially and drove her school. Defendant also continued to have regular anal intercourse with C.T. when she visited his home. In August 2002, C.T. was at defendant's home when he asked to have sex with her. C.T. said no and began to cry. Defendant then put his hand inside the front of her pants and touched her, but was interrupted by the phone. C.T. then left the room.
C.T., fearful of defendant, never told anyone about these incidents. However, she did write about them in a private journal which Tessie eventually discovered. Tessie confronted C.T. about the events described in her journal, but C.T. refused to talk about them. Tessie then contacted the police.
At trial, C.T. testified about the incidents described above. Two officers who had interviewed C.T. about the incidents, Officers Long and Harlukowicz, corroborated her testimony. Nakita Whitehead, a social worker at the department of Social Services, also corroborated C.T.'s testimony. The State also presented expert testimony from Dr. Strickland, who had examined C.T. Dr. Strickland found no physical evidence of abuse, but stated thatthis was common in such cases because the anal area heals quickly and scars in the area are hard to see.
Carolyn Evonne Paul ("Carolyn"), C.T.'s stepsister and defendant's oldest child, also testified. Carolyn stated that she had lived apart from defendant as a girl, but moved in with him when she was nineteen or twenty years old. About six months later, defendant began having vaginal intercourse with Carolyn while her stepmother was at work. When Carolyn resisted, defendant threatened her. After Carolyn became pregnant, defendant was convicted of two counts of felonious incest and sent to prison.
Defendant first argues that the court erred in its ruling on defendant's motion to sequester C.T. and her mother, Tessie. We disagree.
Before trial, defendant moved to sequester both C.T. and Tessie. The court allowed Tessie to be present during C.T.'s testimony, but sequestered C.T. during Tessie's testimony. "A ruling on a motion to sequester witnesses rests within the sound discretion of the trial court, and the court's denial of the motion will not be disturbed in the absence of a showing that the [action] was so arbitrary that it could not have been the result of a reasoned decision." State v. Call, 349 N.C. 382, 400, 508 S.E.2d 496, 507-08 (1998). We find no error and abuse of discretion in the court allowing Tessie to be present when C.T. testified as this ruling is specifically permitted by statute:
Upon motion of a party the judge may order all or some of the witnesses other than the defendant to remain outside of the courtroom until called to testify, except when a minorchild is called as a witness the parent or guardian may be present while the child is testifying even though his parent or guardian is to be called subsequently.
N.C. Gen. Stat. § 15A-1225 (emphasis added).
Defendant next argues that the court erred in allowing evidence of defendant's prior bad acts. For the reasons discussed below, we disagree.
Defendant objected to testimony from defendant's daughter Carolyn about defendant's incestuous relationship with her. The court found this testimony was relevant, more probative than prejudicial, and admissible to show proof of his motive, intent and knowledge. N.C. Gen. Stat. § 8C-1, Rule 404(b) ("[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident."). Defendant contends that this evidence was too remote and different, and that its admission was unfairly prejudicial. However, defendant's focus on the insufficient similarity between the incidents is misplaced.
Evidence of prior sexual offenses is often admitted to show a defendant's common scheme or plan. In such cases, the court must consider two factors: similarity and remoteness in time. State v. Sneeden, 108 N.C. App. 506, 509, 424 S.E.2d 449, 451 (1993), affirmed, 336 N.C. 482, 444 S.E.2d 218 (1994). Here, however, the evidence was admitted as evidence of defendant's motive, intent andknowledge. The court's comments in ruling to admit the testimony make clear that it was the difference between the sexual contacts with Carolyn and C.T. that it found probative. The court stated that Carolyn's forecast testimony would "help the jury understand why the defendant chose to engage in acts of anal intercourse with a female child as opposed to engaging in acts of vaginal intercourse with a female child . . . ." The court then explained that defendant's previous experience in getting his daughter pregnant might have taught him that vaginal intercourse with a child could lead to an incest prosecution, thus leading him to engage only in anal intercourse with C.T.
"With respect to prior sexual offenses, we have been very liberal in permitting the State to present such evidence to prove any relevant fact not prohibited by Rule 404(b)." State v. White, 331 N.C. 604, 612, 419 S.E.2d 557, 561 (1992). Because the testimony was admitted to prove motive, intent and knowledge under Rule 404(b), we conclude that its admission was proper.
Defendant also argues that the court erred in failing to give a limiting instruction at the time of Carolyn's testimony. "The admission of evidence which is relevant and competent for a limited purpose will not be held error in the absence of a request by the defendant for a limiting instruction. State v. Stager, 329 N.C. 278, 309, 406 S.E.2d 876, 894 (1991). Counsel must specifically request such an instruction. Id. Since, defendant failed to make such a request, we see no error. Defendant next contends that the court erred in denying his motion to dismiss, arguing that a fatal variance existed between the indictment and the evidence presented. Defendant based his motions at trial solely on the ground of insufficient evidence and thus has failed to preserve this argument for appellate review. State v. Francis, 341 N.C. 156, 160, 459 S.E.2d 269, 271 (1995). Thus, we decline to reach the merits of this issue, and overrule this assignment of error.
Defendant next argues that the court erred in the voir dire questioning of the venire. We disagree.
The right of counsel to question prospective jurors is subject to close supervision by the trial court. State v. Jones, 347 N.C. 193, 203, 491 S.E.2d 641, 647 (1997). "The regulation of the manner and the extent of the inquiry rests largely in the discretion of the trial court." Id. The court's exercise of this discretion will not be reversed without "a showing by the defendant of harmful prejudice and clear abuse of discretion by the trial court." Id. Defendant contends that the State "`staked out' a jury that would be predisposed to convict" him. However, during voir dire, the court sustained each of defendant's four objections. Thus, defendant fails to show either abuse of discretion or harmful prejudice.
Defendant also argues that the court erred in overruling defendant's objection to statements in the State's closing argument. We disagree. Here, defendant objected to the following statement in the State's closing argument:
If you don't think she's been there and done that, I say there's not a case in this courtroom where there's sex offense alleged and it's anal intercourse that the State could bring to you that you could find somebody guilty of. This is as strong a case as you're going to see.
The court overruled the objection. Defendant contends that this language constituted the "prosecutor's own personal vouching that this was the strongest sexual abuse case that he had ever seen."
Specific guidelines for closing argument are established by statute:
(a) During a closing argument to the jury an attorney may not become abusive, inject his personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice. An attorney may, however, on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue.
N.C.G.S. § 15A-1230(a) (2001). "The standard of review for improper closing arguments that provoke timely objection from opposing counsel is whether the trial court abused its discretion by failing to sustain the objection." State v. Jones, 355 N.C. 117, 127, 558 S.E.2d 97, 104 (2002). "This Court will not disturb the trial court's exercise of discretion over the latitude of counsel's argument absent any gross impropriety in the argument that would likely influence the jury's verdict." State v. Lloyd, 354 N.C. 76, 113, 552 S.E.2d 596, 623 (2001). Our courts havefound no error in previous cases where prosecutors have made similar statements. See id. (finding no error in calling the shooting "the biggest, most preposterous accident that has ever happened in Alamance County"); State v. Fullwood, 343 N.C. 725, 472 S.E.2d 883, 891 (1996), cert. denied, 520 U.S. 1122, 137 L. Ed. 2d 339 (1997) (finding no error in statement that crime was "one of the worst murders anybody has ever heard of"). We overrule this assignment of error.
Finally, defendant argues that the court erred in calculating his sentence. Defendant asserts that his maximum sentence of 441 months falls outside the permitted range. As explained below, we find the sentence was properly calculated.
Defendant was convicted of a B1 felony and had a prior record level of IV with nine points. Under the chart referenced in N.C. Gen Stat. § 15A-1340.17 (c)(2), defendant's minimum sentencing range is 307 to 384 months; defendant was properly sentenced to a minimum of 360 months. Defendant's maximum sentence was calculated as specified by N.C. Gen Stat. § 15A-1340.17 (e)(1):
Maximum Sentences Specified for Class B1 through Class E Felonies for Minimum Terms of 340 Months or More. - Unless provided otherwise in a statute establishing a punishment for a specific crime, when the minimum sentence is 340 months or more, the corresponding maximum term of imprisonment shall be equal to the sum of the minimum term of imprisonment and twenty percent (20%) of the minimum term of imprisonment, rounded to the next highest month, plus nine additional months.
Since defendant was convicted of a B1 felony, and his minimum sentence exceeded 340 months, his maximum sentence was correctlycalculated by adding twenty percent of his minimum sentence (72 months) to his total minimum sentence (360 months) plus nine months for a total of 441 months. Thus, defendant's sentence calculation is without error.
No error.
Judges GEER and THORNBURG concur.
Report per Rule 30(e).