STATE OF NORTH CAROLINA v. HAROLD RAY ESTES

No. COA07-225

(Filed 16 October 2007)

**1. False Pretense— obtaining property by false pretenses— conspiracy to obtain property by false pretenses—motion to dismiss—sufficiency of evidence—aiding and abetting**

The trial court did not commit prejudicial error by denying defendant's motions to dismiss the charges of obtaining property by false pretenses and conspiracy to obtain property by false pretenses at the close of the evidence where the jury could infer through defendant's actions and relationships to the parties that he knowingly and willingly laundered nearly one-half million dollars through his personal and business banking accounts in aiding and abetting multiple persons in obtaining property by false pretenses from the school system.

2. **Indictment and Information— constructive amendment through jury instructions—change from acting in concert to aiding and abetting—obtaining property by false pretenses**

The trial court did not constructively amend the allegation in the indictment from acting in concert to aiding and abetting obtaining property by false pretenses through the jury instructions, because: (1) the bill of indictment charged defendant with the offense of obtaining property by false pretenses under N.C.G.S. § 14-100; (2) the charge was not substantially altered when neither acting in concert nor aiding and abetting are essential elements to the crime of obtaining property by false pretenses, and either theory of criminal liability is treated as surplusage; (3) defendant failed to show that instructing the jury on the basis of one of these theories of guilt substantially altered the charged offense, and our Supreme Court has stated the distinction between a defendant being found guilty of aiding and abetting and acting in concert is of little significance; (4) defendant had timely notice of the charges brought against him to enable him to adequately prepare his defense for trial; and (5) defendant was not convicted of a crime different from that alleged in the bill of indictment.

3. **Criminal Law— clerical error in judgment—embezzlement—obtaining property by false pretenses**

The trial court erred by entering judgment against defendant for embezzlement when he was charged with and found to be guilty by a jury of obtaining property by false pretenses, and the case is remanded to the trial court for the limited purpose of corrected this clerical error in the judgment and commitment.

Appeal by defendant from judgments entered 25 August 2006 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 13 September 2007.

*Attorney General Roy Cooper, by Assistant Attorney General David N. Kirkman, for the State.*

*The Martin Law Firm, P.A., by J. Matthew Martin and Harry C. Martin, for defendant-appellant.*

TYSON, Judge.

Harold Ray Estes ("defendant") appeals from judgments entered after a jury found him to be guilty of obtaining property by false pre-

tenses pursuant to N.C. Gen. Stat. § 14-100 and conspiracy to obtain property by false pretenses pursuant to N.C. Gen. Stat. § 14-2.4 and § 14-100. We find no error at trial and remand for correction of a clerical error in 05 CRS 082472.

## I. Background

Defendant was involved in a scheme involving "prebill" phoney invoices to defraud the Wake County Board of Education and the Wake County Public School System (the "School System") out of millions of dollars, perpetrated by employees of Barnes Motor & Parts Co. ("Barnes") and employees of the School System's Department of Transportation (the "School Bus Garage").

Several employees of the School Bus Garage became suspicious of their co-workers' activities. Doug Kenney ("Kenney"), Director of Internal Audit for Wake County, initiated an investigation into the business relationship between Barnes and the School Bus Garage.

Kenney conducted a physical review of invoices from and checks to Barnes and discovered "some unusual activity," which specifically included: (1) all invoices from Barnes were under $2,500.00; (2) some invoices only listed part numbers without part descriptions; (3) some invoices were exactly the same amount with different part numbers; (4) many invoices appeared to have been entered within a few minutes of each other; and (5) multiple attempts to match part numbers with identifiable inventory or installed parts failed.

Kenney prepared charts analyzing the dollar amounts paid to Barnes on their invoices by the School System in June 2003 and June 2004, the end of the respective fiscal years. In June 2003, Barnes was paid $3.2 million dollars. This amount was "several times larger" than amounts paid in previous months. Kenney found a similar pattern from July 2003 to June 2004.

Kenney also reviewed the billing system and found Barnes billed the School System prior to delivery of merchandise, which was "contrary to the [S]chool [S]ystem procedure." Kenney discovered many items identified in the prepayment account had not been received and the part numbers listed on the invoices were fictitious.

Bobby Browder ("Browder") testified for the State against defendant pursuant to his guilty plea. Browder served as Vice President of Store Operations for Barnes and supervised its store in Raleigh. At trial, Browder admitted involvement in a scheme to bill the School System for merchandise neither delivered nor received.

STATE v. ESTES

[186 N.C. App. 364 (2007)]

Browder testified unspent money in the budget would be lost if not spent by the end of each fiscal year. Browder agreed for Barnes to "prebill" the School System for merchandise and essentially give the School Bus Garage credit to purchase against the following fiscal year. Browder explained that the "prebill" monies were not placed in escrow for the School System, but were deposited directly into Barnes's checking account.

Barnes began to supply the School System with computers, furniture, equipment, and personal items as a part of the "prebill" scheme. Barnes profited by purchasing these items at retail prices and charging the School System an additional thirty percent. Subsequently, Barnes used the "prebill" money to buy items other than supplies for the School System such as a moped, a four-wheeler, carpet, campers, boats, and gift cards with an aggregate value of over $100,000.00. The prices of the vehicles, merchandise, and gift cards were billed to the School System through fictitious invoices or by deducting the money from the credit accrued from the "prebill."

Browder testified that he met defendant through Connie Capps ("Capps"), a fellow Barnes employee. Defendant was Capps's boyfriend at the time. Beginning in June 2003, Browder started writing checks to defendant, Harold Estes Enterprises, and defendant's Wells Fargo credit card account. Browder testified he did not believe defendant was in the business of buying for or selling merchandise to the School System or to Barnes. Browder wrote checks payable to defendant to reimburse him for items he had purchased "for Wake County." Checks in the amount of $10,000.00 or greater were charged back to the School System. Browder testified he knew he was funding and paying for personal items for the benefit of others from the School System's funds or credits.

State Bureau of Investigation Special Agent Gil Whitford ("Agent Whitford") investigated this case on behalf of the Wake County District Attorney. Agent Whitford testified he went to defendant's and Capps's residence to interview them. Agent Whitford became suspicious when he discovered numerous vehicles parked and other various items stored in defendant and Capps's backyard including: (1) two new F-150 Ford pick-up trucks; (2) a motor home; (3) a Haul Master trailer; (4) a Suzuki Quadrunner; (5) a Suzuki Quadmaster; (6) a Monterey motorboat; (7) a golf cart; (8) three Honda scooters; (9) a Chevrolet Z-71 pickup truck; (10) two large motorcycles; (11) two medium-sized motorcycles; (12) one Zuma scooter; and (13) a "rover."

**STATE v. ESTES**

[186 N.C. App. 364 (2007)]

Agent Whitford interviewed defendant on two separate occasions at his attorney's office. In the interview, defendant stated that he was self-employed, formerly owned a body shop, and was involved in various real estate ventures. When asked about the checks he had received from Barnes, defendant admitted involvement in an arrangement to facilitate the purchase of items for Carol Finch ("Finch"), the Budget and Technology Analyst for the School Bus Garage. Defendant stated he would purchase these items and Barnes would reimburse him, or in many cases, would pay him in advance for expenses he had purportedly incurred on behalf of the School Bus Garage.

During 2003, Barnes paid defendant a total of $260,612.00. During that time period, defendant paid out $192,117.87, leaving a difference of $68,494.13. Similarly, in 2004, Barnes paid defendant $274,900.00. Defendant paid out $200,634.61, leaving a difference of $74,265.39. Over the span of two years, defendant acquired $142,759.52 by laundering money through his personal and business bank accounts.

Defendant asserted all payments made were on behalf of Finch or the School Bus Garage. Agent Whitford inquired into every expenditure defendant had made during this two-year period and found defendant had a very close relationship with both Capps and Finch, two women who played major roles in the "prebill" scheme. Agent Whitford found defendant participated in expensive shopping trips with Capps and Finch. Defendant would often buy thousands of dollars worth of vehicles and merchandise on "behalf of Finch" and keep them for himself. Agent Whitford also found defendant traveled with Capps and Finch to exotic locations and spent more than $15,000.00 dollars on these trips. These expenditures were all financed by the monies laundered through defendant's bank accounts for Barnes.

On 25 August 2006, a jury found defendant to be guilty of obtaining property by false pretenses and conspiracy to obtain property by false pretenses. Defendant was sentenced to seventy-three months minimum and ninety-seven months maximum imprisonment and a $500,000.00 fine for "embezzlement." Defendant was also sentenced to a consecutive sentence of sixty-four months minimum and eighty-six months maximum for conspiracy to obtain property by false pretenses. Defendant appeals.

## II. Issues

Defendant argues the trial court erred by: (1) denying his motions to dismiss at the close of the evidence; (2) constructively amending the allegation in the indictment from acting in concert to aiding and

abetting obtaining property by false pretenses through the jury instructions; and (3) entering judgment against him for "embezzlement" when he was charged with and found to be guilty by a jury of obtaining property by false pretenses.

### III. Motions to Dismiss

**[1]** Defendant argues the trial court committed prejudicial error by denying his motions to dismiss at the close of the evidence. We disagree.

### A. Standard of Review

Upon defendant's motion for dismissal, the question for the court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied. . . . The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion.

*State v. Powell*, 299 N.C. 95, 98-99, 261 S.E.2d 114, 117 (1980) (internal citations and quotations·omitted).

### B. Analysis

At the close of the State's evidence, the trial court denied defendant's motions to dismiss and stated "the relationship of the parties and the conduct of the defendant [were] sufficient [to] infer that the defendant *knowingly aided* in the commission of the crime of the taking property by false pretense . . . ." (Emphasis supplied). Our Supreme Court has stated the elements of aiding and abetting are: (1) the crime was committed by some other person; (2) the defendant knowingly advised, instigated, encouraged, procured, or aided the other person to commit that crime; and (3) the defendant's actions or statements caused or contributed to the commission of the crime by that other person. *State v. Francis*, 341 N.C. 156, 161, 459 S.E.2d 269, 272 (1995).

For a defendant to be found guilty of aiding and abetting, he "must aid or actively encourage the person committing the crime or

in some way communicate to this person his intention to assist in its commission. The communication or intent to aid . . . may be inferred from his actions and from his relation to the actual perpetrators." *State v. Goode*, 350 N.C. 247, 260, 512 S.E.2d 414, 422 (1999) (internal citations omitted).

The State's evidence tended to show defendant lived with Capps and had a very close relationship with Finch, two of the scheme's principal players. Capps and Finch would bring the phoney invoices home to defendant's residence for finalizing and processing. Defendant would accompany Capps and Finch on various shopping trips, where he willingly purchased several expensive automobiles "on behalf of Finch" that were actually titled in his or Capps's name. Defendant gave Finch several thousand dollars in cash for the Fourth of July weekend and on several other occasions for no specific reason. Defendant helped pay off "Finch's loans," subsequently found to be Capps's son's loans. Defendant also purchased Finch an expensive RV and paid rental for the lot on which it was parked.

Subsequently, defendant purchased yet another RV "on Finch's behalf," which sat permanently on a lot in Myrtle Beach, South Carolina. Agent Whitford found that defendant and Capps often travelled to Myrtle Beach and stayed in this particular RV. Defendant purchased jet skis, golf carts, and several vehicles titled in Finch's name for his use when he traveled to Myrtle Beach. Agent Whitford also found defendant, Capps, and Finch traveled to Mexico and Key West together and spent between $15,000.00 and $17,000.00. Defendant was reimbursed for all of these expenditures from Barnes, who charged these expenses back to the School System.

Through defendant's actions and relationships to the parties, the jury could infer he knowingly and willingly laundered nearly one-half million dollars through his personal and business banking accounts in aiding and abetting Brower, Capps, and Finch in obtaining property by false pretenses from the School System. *Francis*, 341 N.C. at 161, 459 S.E.2d at 272. Viewed in the light most favorable to the State, the evidence at trial was sufficient to withstand defendant's motions to dismiss for insufficiency of the evidence and to submit the charge of aiding and abetting to the jury. *Powell*, 299 N.C. at 98, 261 S.E.2d at 117. This assignment of error is overruled.

## IV.  Aiding and Abetting Instructions

[2] Defendant argues the trial court committed prejudicial error in violation of his constitutional rights by constructively amending the

allegation in the indictment from acting in concert to aiding and abetting obtaining property by false pretenses through its charge to the jury. Defendant argues the jury convicted him on a basis different from that alleged in the bill of indictment. We disagree.

## A. Standard of Review

N.C. Gen. Stat. § 15A-923(e) (2005) prohibits the amendment of a bill of indictment. Our Supreme Court has interpreted this statute to mean "a bill of indictment may not be amended in a manner that *substantially alters* the charged offense. In determining whether an amendment is a substantial alteration, we must consider the multiple purposes served by indictments, the primary one being to enable the accused to prepare for trial." *State v. Silas*, 360 N.C. 377, 380, 627 S.E.2d 604, 606 (2006) (emphasis supplied) (internal citations and quotations omitted).

## B. Analysis

A criminal bill of indictment is sufficient "if it express[es] the charge against the defendant in a plain, intelligible, and explicit manner." N.C. Gen. Stat. § 15-153 (2005). "Specifically, the indictment must allege all of the essential elements of the crime sought to be charged. Allegations beyond the essential elements of the crime sought to be charged are irrelevant and may be treated as surplusage." *State v. Westbrooks*, 345 N.C. 43, 57, 478 S.E.2d 483, 492 (1996) (internal citations and quotations omitted). This requirement ensures that a defendant may adequately prepare his defense. *Id.* at 58, 478 S.E.2d at 492.

Here, the bill of indictment charged defendant with the offense of obtaining property by false pretenses pursuant to N.C. Gen. Stat. § 14-100. The essential elements of obtaining property by false pretenses are:

> (1) that the representation was made as alleged; (2) that property or something of value was obtained by reason of the representation; (3) that the representation was false; (4) that it was made with intent to defraud; [and] (5) that it actually did deceive and defraud the person to whom it was made.

*State v. Carlson*, 171 N.C. 818, 824, 89 S.E. 30, 33 (1916). Neither acting-in-concert nor aiding and abetting are essential elements to the crime of obtaining property by false pretenses. Accordingly, we treat either theory of criminal liability as "surplusage." *Westbrooks*, 345 N.C. at 57, 478 S.E.2d at 492.

Because our Supreme Court has stated that allegations of whether a defendant was acting in concert or aiding and abetting are "irrelevant and surplusage," defendant has failed to show that instructing the jury on the basis of one of these theories of guilt "substantially alters the charged offense." *Silas*, 360 N.C. at 380, 627 S.E.2d at 606. Defendant's argument that he was unable to adequately prepare his defense for trial against one of the two theories of criminal liability to convict him of obtaining property by false pretenses is without .merit. Our Supreme Court has stated " '[t]he distinction between [a defendant being found guilty of] aiding and abetting and acting in concert . . . is of little significance. Both are equally guilty.' " *State v. Bonnett*, 348 N.C. 417, 440, 502 S.E.2d 563, 578 (1998) (quoting *State v. Williams*, 299 N.C. 652, 656, 263 S.E.2d 774, 777 (1980)), *cert. denied*, 525 U.S. 1124, 142 L. Ed. 2d 907 (1999).

Since our Supreme Court has found "little significance" in the two theories upon which to establish guilt and that allegations of either of these theories of culpability should be treated as "irrelevant and surplusage," defendant's argument that the bill of indictment was amended in a manner that "substantially alters" the charged offense by the trial court's instructions to the jury is without merit. *Silas*, 360 N.C. at 380, 627 S.E.2d at 606. Defendant had timely notice of the charges brought against him to enable him to adequately prepare his defense for trial. *Id.* Defendant was not convicted of a crime different from that alleged in the bill of indictment. Defendant was charged with and convicted of obtaining property by false pretenses. This assignment of error is overruled.

### V.  Judgment and Commitment Order

**[3]** Defendant argues the trial court erred by entering judgment against him for "embezzlement" when he was charged with and found to be guilty by a jury of obtaining property by false pretenses. The State acknowledges this clerical error and joins in defendant's argument to remand for clarification of the record.

N.C. Gen. Stat. § 15A-1301 (2005) states, in relevant part, "[w]hen the commitment is to a sentence of imprisonment, the commitment must include the identification and class of the offense or offenses for which the defendant was convicted." Here, the transcript and the jury's verdict form indicate defendant was found to be guilty by a jury of obtaining property by false pretenses. The trial court made a clerical error by listing the charge in the judgment and commitment in 05

CRS 082472 as "embezzlement" pursuant to N.C. Gen. Stat. § 14-90 rather than obtaining property by false pretenses pursuant to N.C. Gen. Stat. § 14-100. This case is remanded to the trial court for the limited purpose of correcting this clerical error in the judgment and commitment in 05 CRS 082472.

## VI. Conclusion

The trial court properly denied defendant's motions to dismiss for insufficiency of the evidence. The State presented sufficient evidence at trial that defendant knowingly aided multiple persons in obtaining property by false pretenses, by laundering nearly one-half million dollars through his personal and business banking accounts. The trial court did not constructively amend the bill of indictment by submitting aiding and abetting instructions to the jury.

The trial court erred by listing the incorrect offense of which defendant was convicted in the judgment and commitment in 05 CRS 082472. This case is remanded to the trial court for the limited purpose of correcting this clerical error.

No Error and Remanded for Correction of Clerical Error.

Judges HUNTER and GEER concur.