IN THE SUPREME COURT OF NORTH CAROLINA

No. 458A19

Filed 18 December 2020

IN THE MATTER OF: W.K. and N.K.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 12 September 2019 by Judge Christine Underwood, in District Court, Alexander County. Heard in the Supreme Court on 13 October 2020.

> *Thomas R. Young for petitioner-appellee Alexander County Department of Social Services.*
>
> *Elisabeth C. Kelly for appellee Guardian ad Litem.*
>
> *Kathleen M. Joyce for respondent-appellant father.*

MORGAN, Justice.

In this matter, respondent-father appeals from the trial court's orders terminating respondent-father's parental rights to his biological children, "Wesley" and "Natasha."[1] Respondent-father's primary challenge to the termination orders is that his guardian *ad litem* (GAL), appointed pursuant to Rule 17 of the North Carolina Rules of Civil Procedure and N.C.G.S. § 7B-1101.1, did not participate sufficiently to satisfy the statutory requirements of his role and, thus, that the trial court abused its discretion in advancing the adjudication and disposition proceedings

---

[1] The minor children will be referred to throughout this opinion as Wesley and Natasha, which are pseudonyms used to protect their identities and for ease of reading.

which ultimately resulted in the termination of respondent-father's parental rights. *See* N.C.G.S. § 1A-1, Rule 17 (2019); N.C.G.S. § 7B-1101.1 (2019). We disagree and therefore affirm the trial court's orders.

*Factual Background and Procedural History*

Wesley and Natasha each tested positive for the presence of controlled substances at birth. In juvenile petitions filed by the Alexander County Department of Social Services (DSS) on 3 March 2016, the children's mother was alleged to have "a sustained addiction to controlled substances which ha[d] impaired her ability to provide appropriate care" for Wesley and Natasha. Respondent-father was not living with the mother and the children, but he was named in the petition as the father of Wesley and Natasha. Wesley and Natasha were adjudicated to be neglected juveniles in April 2016 and placed in the custody of DSS. Following a review hearing on 12 January 2017, the trial court entered an order on 2 February 2017 relieving DSS of reunification efforts and establishing adoption as the sole plan. On 10 October 2017, DSS filed motions to terminate the parental rights of respondent-father and the mother, alleging the grounds of neglect and failure to make reasonable progress to correct the conditions which led to removal of the juveniles. *See* N.C.G.S. § 7B-1111(a)(1)–(2) (2019). Following a 29 March 2018 hearing, the trial court entered orders on 10 May 2018 terminating respondent-father's and the mother's parental rights after adjudicating the existence of both grounds alleged in the motions for

termination. Both parents filed notices of appeal.[2] At that stage, respondent-father's sole appellate issue was that the trial court erroneously deprived him of his right to be represented by counsel at the termination hearing. Upon review, the Court of Appeals agreed and vacated those portions of the orders terminating respondent-father's parental rights to the juveniles and remanded for a new hearing on the motions to terminate respondent-father's parental rights. *In re K.S.K.*, No. COA18-814, 2019 WL 1472981 (N.C. Ct. App. Apr. 2, 2019) (unpublished).[3]

On remand, respondent-father was appointed new counsel, and the trial court made the following findings:

> Respondent has previously admitted to being diagnosed with bi[-]polar disorder, depression, and schizophrenia. He previously received special education classes. He received a psychiatric evaluation on October 17, 2017, in which he admitted having auditory hallucinations in the past. He receives disability for psychiatric issues, and has an alternate payee. His intellectual function is well below normal. He has poor insight and judgment. He is a poor historian. He had hydrocephalus as a child. He did not graduate high school. He has previously had his IQ evaluated and was placed on the scale at 71. He has difficulty with information processing skills. A Rule 17 hearing was held in October 2017. Respondent presents today in court with a blank and confused look on his face. On December 17, 2009 he received a diagnosis of schizophrenia and mental retardation[.]

---

[2] The children's mother is not a party to this appeal.

[3] Wesley and Natasha's half-sibling, "K.," was the first named party in the previous appeal but is not a subject of this appeal.

Accordingly, respondent-father was appointed a GAL pursuant to Rule 17. N.C.G.S. § 1A-1, Rule 17(b)(2) ("In actions or special proceedings when any of the defendants are . . . incompetent persons, . . . the court in which said action or special proceeding is pending . . . may appoint some discreet person to act as guardian ad litem, to defend in behalf of such . . . incompetent persons . . . ."). Thereafter, a termination hearing was held in July and August 2019.

Prior to the termination hearing, respondent-father met with both his counsel and his Rule 17-appointed GAL, Edward Hedrick, both of whom jointly discussed the case with respondent-father. At the 25 July 2019 hearing, respondent-father's counsel reported to the trial court that respondent-father wanted his counsel to withdraw because respondent-father did not believe his counsel was working on his behalf. The Rule 17 GAL was asked for any thoughts, and he expressed that he had none at that moment. The trial court denied counsel's motion to withdraw. Testimony from a DSS social worker was received during which counsel for respondent-father objected and then moved for and received a continuance to review pertinent records. Respondent-father's Rule 17 GAL was not directly consulted in regard to the motion to continue, but he had joined with respondent-father's counsel in making two objections to the evidence, and he also assisted in identifying a date for the new hearing.

On 15 August 2019 when the termination hearing resumed, respondent-father did not appear. Respondent-father's GAL was silent at this hearing but did confer

with respondent-father's counsel. Counsel for respondent-father moved to continue the matter, which was denied. Respondent-father's counsel again moved for a continuance at the close of DSS's evidence. The trial court denied the second motion to continue. No evidence was presented on respondent-father's behalf. The trial court proceeded to the disposition stage and again denied a motion to continue by counsel for respondent-father. Orders terminating respondent-father's parental rights on both grounds were entered on 12 September 2019. Respondent-father's direct appeal is now before our Court.[4]

---

[4] Respondent-father's notice of appeal states that he is appealing from "the Order Terminating Parental Rights that was filed on August 15, 2019." The termination hearing concluded on 15 August 2019, and the trial court stated that termination was in the best interests of the juveniles and provided written findings to counsel on that date. The trial court subsequently filed two orders terminating respondent-father's parental rights on 12 September 2019. The notice of appeal thus does not properly designate the orders from which respondent-father appeals.

Rule 3(d) of the North Carolina Rules of Appellate Procedure provides that a notice of appeal "shall designate the judgment or order from which appeal is taken . . . ." N.C. R. App. P. 3(d). "Compliance with the requirements for entry of notice of appeal is jurisdictional." *State v. Oates*, 366 N.C. 264, 266, 732 S.E.2d 571, 573 (2012) (citing *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.,* 362 N.C. 191, 197–98, 657 S.E.2d 361, 365 (2008)). "As such, 'the appellate court obtains jurisdiction only over the rulings specifically designated in the notice of appeal as the ones from which the appeal is being taken.' " *Sellers v. Ochs,* 180 N.C. App. 332, 334, 638 S.E.2d 1, 2–3 (2006) (citation omitted). An exception exists where "a mistake in designating the judgment, or in designating the part appealed from if only a part is designated, should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be *fairly inferred* from the notice and the appellee is not misled by the mistake." *Evans v. Evans,* 169 N.C. App. 358, 363, 610 S.E.2d 264, 269 (2005) (citation omitted).

In this matter, DSS and the children's guardian *ad litem* have fully participated in the appeal, do not challenge this Court's jurisdiction, and do not appear to have been misled by the mistake. Respondent-father's inclusion of the correct lower-court numbers and his characterization of the order at issue as terminating his parental rights make sufficiently clear his intent to appeal the orders entered on 12 September 2019, and we thus address the

*Analysis*

In his appeal before this Court, respondent-father's first argument is that his Rule 17 GAL did not appropriately represent him. Respondent-father and DSS agree that this question is a matter of discretion for the trial court. "An '[a]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.' " *In re T.L.H.*, 368 N.C. 101, 107, 772 S.E.2d 451, 455 (2015) (alteration in original).

In his second argument, respondent-father challenges several of the trial court's findings of fact as unsupported by the evidence produced during the adjudication stage. Because a finding of only one ground is necessary to support a termination of parental rights, *see In re T.N.H.*, 372 N.C. 403, 413, 831 S.E.2d 54, 62 (2019), we only address respondent-father's argument regarding alleged error in the trial court's ultimate finding as to the existence of the basis for termination of neglect. *See* N.C.G.S. § 7B-1111(a)(1). We review

> trial court orders in cases in which a party seeks to have a parent's parental rights in a child terminated by determining whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether those findings support the trial court's conclusions of law. A trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that would support a contrary finding.

merits of respondent-father's appeal.

*In re B.O.A.*, 372 N.C. 372, 379, 831 S.E.2d 305, 310 (2019) (citations omitted).

Here we hold that the ground of neglect was so supported. Grounds exist to terminate parental rights when "[t]he parent has . . . neglected the juvenile . . . within the meaning of G.S. 7B-101." N.C.G.S. § 7B-1111(a)(1). A neglected juvenile is defined, in pertinent part, as a juvenile "whose parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline; . . . or who lives in an environment injurious to the juvenile's welfare . . . ." N.C.G.S. § 7B-101(15) (2019). When termination of parental rights is based on neglect, "if the child has been separated from the parent for a long period of time, there must be a showing of . . . a likelihood of future neglect by the parent." *In re D.L.W.*, 368 N.C. 835, 843, 788 S.E.2d 162, 167 (2016) (citing *In re Ballard*, 311 N.C. 708, 713–15, 319 S.E.2d 227, 231–32 (1984)).[5] "When determining whether such future neglect is likely, the district court must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing." *In re Z.V.A.*, 373 N.C. 207, 212, 835 S.E.2d 425, 430 (2019) (citing *Ballard*, 311 N.C. at 715, 319 S.E.2d at 232).

*I. Sufficiency of performance by respondent-father's Rule 17 GAL*

---

[5] The Court in *In re Ballard* held that an adjudication of past neglect is admissible in subsequent proceedings to terminate parental rights, but is not, standing alone, enough to prove that a ground exists to terminate parental rights on the basis of neglect. 311 N.C. 708, 713–15, 319 S.E.2d 227, 231–32 (1984). The Court in *In re Ballard* did not suggest that a showing of past neglect is necessary in order to terminate parental rights in every case. Indeed, N.C.G.S. § 7B-1111(a)(1) does not require a showing of past neglect if the petitioner can show current neglect as defined in N.C.G.S. § 7B-101(15). To the extent other cases have relied upon *In re D.L.W.* as creating such a requirement, we disavow such an interpretation.

Respondent-father's first contention is that the trial court abused its discretion when it proceeded through the adjudication and disposition hearings without the active participation of respondent-father's Rule 17 GAL. We disagree with respondent-father's characterization of his GAL's performance.

Under Rule 17(e),

> [a]ny guardian ad litem appointed for any party pursuant to any of the provisions of this rule shall file and serve such pleadings as may be required within the times specified by these rules, unless extension of time is obtained. After the appointment of a guardian ad litem under any provision of this rule and after the service and filing of such pleadings as may be required by such guardian ad litem, the court may proceed to final judgment, order or decree against any party so represented as effectually and in the same manner as if said party had been under no legal disability, had been ascertained and in being, and had been present in court after legal notice in the action in which such final judgment, order or decree is entered.

N.C.G.S. § 1A-1, Rule 17(e); *see also In re T.L.H.,* 368 N.C. 101, 106, 772 S.E.2d 451, 454 (2015). Appointed counsel and an appointed Rule 17 GAL serve different roles.

> The parent's counsel shall not be appointed to serve as the guardian ad litem and the guardian ad litem shall not act as the parent's attorney. Communications between the guardian ad litem appointed under this section and the parent and between the guardian ad litem and the parent's counsel shall be privileged and confidential to the same extent that communications between the parent and the parent's counsel are privileged and confidential.

N.C.G.S. § 7B-1101.1(d).

While acknowledging that Rule 17 and N.C.G.S. § 7B-1101.1 do not specify exact duties of a GAL appointed under those provisions, respondent-father contends that the trial court abused its discretion by proceeding to judgment on these circumstances, asserting that Rule 17 permits a trial court to proceed against a party only after a GAL performs his or her necessary duties. N.C.G.S. § 1A-1, Rule 17(e) ("After the appointment of a guardian ad litem under any provision of this rule and after the service and filing of such pleadings as may be required by such guardian ad litem, the court may proceed to final judgment, order or decree against any party [represented thereby] . . . .").

Respondent-father asserts that the performance of his Rule 17 GAL was insufficient in that (1) he could not immediately refer to his GAL by name during the July 2019 hearing and (2) the Rule 17 GAL spoke on the record only five times during the July 2019 hearing and did not speak on the record at the August 2019 hearing. In regard to the first assertion, given respondent-father's mental health status and the pressure which the hearing would present for any respondent, we cannot infer from respondent-father's query in reference to the Rule 17 GAL asking "what's your name?", standing alone, that the Rule 17 GAL had failed to fulfill his statutory duties. Respondent-father cites no evidence that respondent-father's question indicated that the GAL had not met with respondent-father or that the Rule 17 GAL had failed to appropriately interact with and adequately represent respondent-father's interests during the termination-of-parental-rights process. As to the Rule 17 GAL's

participation during the August 2019 hearing, respondent-father now contends that the Rule 17 GAL could have been more active by making statements in support of respondent-father's counsel's motion for a continuance and could have "worked with" respondent-father's counsel to present evidence in respondent-father's favor at the August 2019 hearing after the motion for a continuance was denied.

We disagree given that respondent-father has not identified any actions his Rule 17 GAL could have taken that would have improved his chances to obtain a decision in his favor, has not shown the Rule 17 GAL did not guard his due-process rights, and has not shown his Rule 17 GAL did not otherwise adequately assist him in executing his legal rights. It is well-established that "we will not presume error from a silent record." *State v. Bond*, 345 N.C. 1, 26, 478 S.E.2d 163, 176 (1996); *see also Wall v. Timberlake*, 272 N.C. 731, 733, 158 S.E.2d 780, 782 (1968) ("The appellate courts approve when the evidence is sufficient to warrant the findings and when error of law does not appear on the face of the record."). For example, there is no evidence of what, if anything, the Rule 17 GAL could have offered in support of respondent-father's arguments to the trial court regarding the potential replacement of respondent-father's trial counsel. Similarly, respondent-father argues his GAL should have addressed the trial court in support of his counsel's multiple motions to continue, but there is no evidence that the Rule 17 GAL could have offered anything beyond repeating counsel's arguments. Respondent-father contends his Rule 17 GAL could have worked with his counsel to present evidence favorable to him, but

respondent-father does not show his GAL had any such evidence. Moreover, the record establishes that the evidence needed by respondent-father's counsel could only come from respondent-father, not from his GAL.

Respondent-father's arguments are founded on unwarranted assumptions that presume error where none is shown on the record. *Bond*, 345 N.C. at 26, 478 S.E.2d at 176; *see also Wall*, 272 N.C. at 733, 158 S.E.2d at 782. We therefore reject respondent-father's first appellate argument because he has failed to show any reversible error by his Rule 17 GAL in the execution of his role in respondent-father's case.

## II. Findings of Fact 9, 32, 38, and 39

Respondent-father next asserts that portions of Finding of Fact 9 (respondent-father was appropriately represented by a Rule 17 GAL) and Finding of Fact 32 (respondent-father received a high-school diploma or GED, and respondent-father made poor financial choices in spending disability payments on drugs), and the entirety of Finding of Fact 38 (the ultimate finding of fact of the existence of the ground for termination of neglect) and Finding of Fact 39 (the ultimate finding of fact of the existence of the ground for termination of failure to make reasonable progress) were not supported by clear and convincing evidence. We affirm the trial court's termination orders on the basis of its finding that the statutory ground for termination of neglect existed, having determined that any errors in the challenged underlying findings of fact are not necessary to the trial court's ultimate finding

regarding neglect.[6] Accordingly, we do not consider respondent-father's challenge to Finding of Fact 39.

Findings of fact used to support the termination of a parent's parental rights must be proven by "clear and convincing evidence." N.C.G.S. § 7B-1111(b). This Court has defined this standard as "greater than the preponderance of the evidence standard required in most civil cases, but not as stringent as the requirement of proof beyond a reasonable doubt required in criminal cases." *In re Montgomery*, 311 N.C. 101, 109–10, 316 S.E.2d 246, 252 (1984). As explained above, Finding of Fact 9—that the Rule 17 GAL provided appropriate representation—is supported by clear and convincing evidence here given the facts and circumstances as previously discussed.

As to the challenged portion of Finding of Fact 32 that respondent-father received "either a diploma or a GED," we agree with respondent-father that the documentary evidence before the trial court indicated that while respondent-father sometimes self-reported that he had graduated from high school or had received his GED, respondent-father actually finished high school with either a "certificate of completion" or a "certificate of attendance," designations given to students in an Exceptional Child Program. However, respondent-father does not explain how this relatively minor error in the characterization of respondent-father's educational

---

[6] In light of our holding regarding neglect, we do not address respondent-father's argument regarding the trial court's ultimate finding regarding the existence of the ground for termination of failure to make reasonable progress in correcting the conditions that led to the removal of the children. *See* N.C.G.S. § 7B-1111(a)(2) (2019).

history would have had any impact on the trial court's ultimate findings that grounds existed to terminate respondent-father's parental rights, and we likewise perceive none.

In regard to the portion of Finding of Fact 32[7] which states that respondent-father "makes poor choices with the financial resources that are made available to him [and w]ith his disability payments, aside from taking care of his personal needs, [respondent-father] purchases a large amount of marijuana and some amounts of cocaine," respondent-father acknowledges that evidence presented at the hearing did indicate his use of marijuana and cocaine, but respondent-father contends that no evidence was presented in the trial court revealing how respondent-father may have paid for the illegal controlled substances. The trial court appears to have made an inference based upon such evidence that respondent-father, having no other apparent source of income beyond his disability payments and having admitted to having used the aforementioned controlled substances, must have paid for those controlled substances with the funds he received for his disability. To the extent that this portion of Finding of Fact 32 is unsupported or represents an unsupported inference, it is not necessary or relevant to the trial court's ultimate finding of the existence of neglect as a basis for termination of respondent-father's parental rights.

---

[7] A separate order was entered for each child, which are virtually identical. For ease of reading, we quote from the order as to Wesley.

As noted above, Wesley and Natasha were adjudicated to be neglected juveniles in April 2016. In order to correct the conditions that led to the children's neglect adjudication and to prevent future instances of neglect, respondent-father was ordered to: (1) complete a Comprehensive Clinical Assessment and comply with all recommendations; (2) complete a domestic violence evaluation and comply with all recommendations; (3) submit to random drug screens; (4) not use or possess alcohol, illegal controlled substances, or drug paraphernalia; (5) use all medications in the amount and manner prescribed; (6) not associate with known substance abusers; (7) not engage in acts of domestic violence; (8) complete parenting classes and demonstrate skills learned during interactions with the juveniles; (9) submit to inpatient substance abuse treatment; (10) refrain from incurring additional criminal charges; and (11) complete a sexual abuse prevention services assessment and follow all recommendations. However, the unchallenged adjudicatory findings of fact establish that respondent-father (1) entered into a case plan to address issues related to those which led to the removal of the children and the potential for future additional neglect of the children; (2) had a long and serious history of substance abuse involving both marijuana and cocaine; (3) never followed the recommendations of his substance abuse assessments and had not taken serious attempts to achieve sobriety; (4) admitted to continuing to use marijuana, had continued to test positive for that substance, and had repeatedly refused to complete drug screens; (5) failed to complete parenting classes; (6) had no contact with his children in years, including

his failure to send cards or gifts despite being able to do so; (7) never procured reliable transportation or availed himself of transportation assistance offered to him; (8) never demonstrated that he had obtained and maintained an appropriate home and refused to allow the social worker to visit the premises; (9) continued to accumulate serious criminal charges including various drug-related offenses and four charges of sex offense with a child by an adult; and (10) had been largely unavailable to his social worker. Based on respondent-father's failure to follow his case plan and the trial court's orders and his continued abuse of controlled substances, the trial court found that there was a likelihood the children would be neglected if they were returned to his care.

These findings of fact, *inter alia*, provide support for the trial court's ultimate finding of the existence of the ground for termination of neglect. Respondent-father has not challenged the trial court's conclusion that termination of his parental rights was in the children's best interests, and we thus affirm the trial court's orders.

AFFIRMED.